**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RONALD EDMONDS,                                    CIVIL ACTION
        Plaintiff,

    v.

NEXUS RV LLC and BOAT-N-RV,                         NO.  19-5348
        Defendants.

## MEMORANDUM AND ORDER

**JOYNER, J.**                                        **February  6 , 2020**

This civil matter is presently before this Court on Motion of Defendant Boat-N-RV/Tilden Recreational Vehicles, Inc.[1] to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, to Stay and Compel Arbitration.  For the reasons outlined below, the Motion to Stay and Compel this matter to Arbitration shall be granted.

### Factual Background

According to the allegations contained in the Complaint, on September 20, 2018, Plaintiff Ronald Edmonds purchased a new, 2019 Maybach 37M recreational vehicle from the Boat-N-RV Superstore located in Hamburg, Berks County, Pennsylvania for

---

[1] Moving Defendant avers in footnote 1 on page 1 of its Motion to Dismiss or Stay that it has been incorrectly identified in Plaintiff's Complaint as "Boat-N-RV".  It asserts that its correct name is "Tilden Recreational Vehicles, Inc., d/b/a Boat-N-RV Superstore" and that it is a New York corporation.  Plaintiff does not dispute these averments.

the sum of $160,594.62.  Plaintiff was and is a resident of Utah and he therefore registered the vehicle, which was manufactured by Defendant Nexus RV, in that state.  (Compl., ¶s 3, 4-6). Plaintiff's Complaint alleges that during the warranty period, he "complained about defects and or non-conformities" to a number of vehicle components and that "[t]he vehicle continues to exhibit defects and nonconformities which substantially impairs its use, value and/or safety."  (Pl's Compl., ¶s 9, 10). Plaintiff seeks relief under the Magnuson-Moss Warranty Improvement Act, 15 U.S.C. §2301, *et. seq.*, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, *et. seq.* ("UTPCPL"), and for breach of warranties pursuant to the Uniform Commercial Code, 13 Pa. C.S. §1101, *et. seq.*

At the time of his purchase, Plaintiff executed a sales agreement with Boat-N-RV which contained a number of provisions, including a statement to the effect that the manufacturer's warranty was the only warranty accompanying the sale of the vehicle and that Boat-N-RV, as the Dealer, was "neither assum[ing] nor authoriz[ing] any person to assume for it any liability in connection with th[e] sale" and clauses relating to, *inter alia,* arbitration and choice of law.  (Compl., Exhibit "A"; Def's Motion to Dismiss, Exhibit "1").  It is on the basis of these clauses that Defendant Boat-N-RV now moves to dismiss

the Complaint in its entirety or, alternatively to compel that this matter be submitted to binding arbitration and stayed in the meanwhile.

## Discussion

It has generally been recognized that the Federal Arbitration Act, 9 U.S.C. §1, *et. seq.*("FAA"), was enacted by Congress in 1925 in response to a perception that courts were "unduly hostile to arbitration" and that by doing so, Congress "directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'" Epic Systems Corp. v. Lewis, 138 S. Ct. 1612, 1621, 200 L. Ed.2d 889 (2018) (quoting 9 U.S.C. §2); CompuCredit Corp. v. Greenwood, 565 U.S. 95, 97, 132 S. Ct. 665, 669, 181 L. Ed.2d 586 (2012).  Specifically, §2 of the Act provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Thus, in place of hostility, the FAA established a liberal federal policy favoring arbitration agreements and the resolution of disputes through arbitration.  Id; Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24,

103 S. Ct. 927, 941, 74 L. Ed.2d 765 (1983); <u>Kirleis v. Dickie,</u>
<u>McCamey & Chilcote, P.C.</u>, 560 F.3d 156, 160 (3d Cir. 2009).

However, "this presumption in favor of arbitration, 'does
not apply to the determination of whether there is a valid
agreement to arbitrate between the parties.'" <u>Dickie</u>,
<u>id</u>,(quoting <u>Fleetwod Enters., Inc. v. Gaskamp</u>, 280 F.3d 1069,
1073 (5th Cir. 2002)).  Indeed since "arbitration is a matter of
contract," a party cannot be compelled to arbitrate any dispute
which it did not agree to arbitrate." <u>AT & T Technologies, Inc.</u>
<u>v. Communications Workers of America</u>, 475 U.S. 643, 648, 106 S.
Ct. 1415, 1418, 89 L. Ed.2d 648 (1986) (quoting <u>Steelworkers v.</u>
<u>Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582, 80 S. Ct.
1347, 1353, 4 L. Ed.2d 1409 (1960)).  Given that the FAA
"requires that a court shall be 'satisfied that the making of
the agreement for arbitration is not in issue' before it orders
arbitration," the threshold question in any case in which one
party seeks to compel arbitration is whether there was indeed a
valid and enforceable contract to arbitrate. <u>Guidotti v. Legal</u>
<u>Helpers Debt Resolution, L.L.C.</u>, 716 F.3d 764, 771, 773 (3d Cir.
2013) (quoting <u>Park-Knit Mills, Inc. v. Stockbridge Fabrics Co.,</u>
<u>Ltd.</u>, 636 F.2d 51, 54 (3d Cir. 1980); 9 U.S.C. §4).  Then, if
there exists a valid agreement to arbitrate and the particular
dispute sought to be arbitrated falls within the scope of the
arbitration agreement, the claim should be submitted to

4

arbitration.  <u>Trippe Manufacturing Co. v. Niles Audio Corp.</u>, 401 F.3d 529, 532 (3d Cir. 2005); <u>Sanum Investment Limited v. San Marco Capital Partners, LLC</u>, 263 F. Supp. 3d 491, 495 (D. Del. 2017); <u>Miron v. BDO Seidman, LLP</u>, 342 F. Supp. 2d 324, 328 (E.D. Pa. 2004).

When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally should apply ordinary state-law principles that govern the formation of contracts.  <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed.2d 985 (1995); <u>Century Indemnity Company v. Certain Underwriters at Lloyd's, London</u>, 584 F.3d 513, 524 (3d Cir. 2009); <u>Lenox Corp. v. Blackshear</u>, 226 F. Supp. 3d 421, 430 (E.D. Pa. 2016). Although the parties make no argument as to which state's law applies to the question of deciding whether the parties agreed to arbitrate arbitrability, the general state law principles are essentially the same.  Under Tennessee law[2], "[w]hile a contract may be either expressed or implied, or written or oral, it must

---

[2] Paragraph 11 of the Sales Agreement between these parties contains a choice of law provision which reads in relevant part:

> 11. **Applicable law, Special Damages, and Limitations Period.**  Except as limited by the explicit incorporation of the Federal Arbitration Act in Paragraph 12 below, and without regard to the application of any conflict of laws principles, this Agreement, the Parties' course of dealing, and any claims arising out of or relating to this Agreement shall be specifically governed by and in accordance with the laws of the State of Tennessee, including, without limitation, the Uniform Commercial Code as adopted in that State. …

result from a meeting of the minds of the parties in mutual
assent to the terms, must be based upon a sufficient
consideration, free from fraud or undue influence, not against
public policy and sufficiently definite to be enforced." Doe v.
HCA Health Services of Tennessee, Inc., 46 S.W.3d 191, 196, 2001
Tenn. LEXIS 460 (Tenn. 2001); Higgins v. Oil, Chemical & Atomic
Workers Int'l Union, Local #3-677, 811 S.W.2d 875, 879 (Tenn.
1991)(quoting Johnson v. Central National Insurance Co. of
Omaha, Nebraska, 210 Tenn. 24, 34-35, 356 S.W.2d 277, 281
(1962)).  "The legal mechanism by which parties show their
assent to be bound is through offer and acceptance." Gatlin v.
Scott, 2019 Tenn. App. LEXIS 472, *6 (Tenn. Ct. App. 2019)
(quoting Moody Realty Co., Inc. v. Huestis, 237 S.W.3d 666, 675,
n.8 (Tenn. Ct. App. 2007).   Under the law of Pennsylvania,
"[i]t is black letter law that in order to form an enforceable
contract, there must be an offer, acceptance, consideration or
mutual meeting of the minds." In re Estate of Wierzbicki v.
Korenoski, 174 A.3d 1061, 1065 (Pa. Super. Ct. 2017)(quoting
Jenkins v. County of Schuylkill, 441 Pa. Super. 642, 658 A.2d
380, 383 (Pa. Super. Ct. 1995).  In other words, contracts arise
"when the parties to it 1) reach a mutual understanding, 2)
exchange consideration, and 3) delineate the terms of their
bargain with sufficient clarity." Weavertown Transportation
Leasing, Inc. v. Moran, 2003 PA Super 385, 834 A.2d 1169, 1172

6

(Pa. Super. Ct. 2003). Consideration consists of a benefit to the promisor or a detriment to the promise.  Id.

*A. Standards Governing Motions to Compel Arbitration*

Further, in evaluating "whether there is a valid agreement to arbitrate, a district court 'must initially decide whether the determination is made under Fed. R. Civ. P. 12(b)(6) or 56.'" Noye v. Johnson & Johnson, 310 F. Supp. 3d 470, 473 (M.D. Pa. 2018) (quoting Sanford v. Bracewell & Guiliani, LLP, 618 Fed. Appx. 114, 2015 WL 4035614 at *2 (3d Cir. 2015)). "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" Guidotti, 716 F.3d at 776 (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 479 (E.D. Pa. 2011)). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question.' After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under

a summary judgment standard." Id. Under this standard of

course, the court must consider all evidence presented by the

party opposing arbitration and construe all reasonable

inferences in that party's favor and find that there is no

genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law. Bey v. Citi Health

Card, Civ. A. No. 15-6533, 2017 U.S. Dist. LEXIS 103812 at *5

(E.D. Pa. July 6, 2017); Ostroff v. Alterra Healthcare Corp.,

433 F. Supp. 2d 538, 541 (E.D. Pa. 2006).

In this case, Paragraphs 11 and 12 of the Sales Agreement,

a copy of which is attached to and made a part of the

Plaintiff's Complaint[3], specifically state in their entirety:

11. **Applicable Law, Special Damages, and Limitations
Period.** Except as limited by the explicit
incorporation of the Federal Arbitration Act in
Paragraph 12 below, and without regard to the
application of any conflict of laws principles, this
Agreement, the Parties' course of dealing, and any
claims arising out of or relating to this Agreement,
shall be specifically governed by and in accordance
with the laws of the State of Tennessee, including,
without limitation, the Uniform Commercial Code as
adopted in that State. In addition, in no event shall
Dealer be liable to You for any special, incidental,
or consequential damages of any kind or character
arising out of the sale or use of the vehicle
described herein, including, without limitation, lost
profits, loss of use, etc., whether such damages are
based in contract, tort, strict liability or
otherwise. The parties further agree that, as between You
and Dealer, **ANY CLAIM OR CAUSE OF ACTION ARISING OUT OF
OR RELATING TO THE PURCHASE AND SALE OF THE VEHICLE(S)
AND/OR EQUIPMENT IDENTIFIED ON PAGE 1 OF THIS AGREEMENT**

---

[3] See Plaintiff's Complaint, ¶6, Exhibit "A".

**MUST BE BROUGHT WITHIN ONE (1) YEAR OF THE DATE ON WHICH YOU TAKE DELIVERY OF SAID VEHICLE(S) OR BE FOREVER BARRED.**

12. **Binding Arbitration.** The Parties agree that the purchase and sale of the Vehicle(s) described on Page 1 of this Agreement is an act of interstate commerce implicating the Federal Arbitration Act to the exclusion of any and all State arbitration act(s). **THE PARTIES FURTHER AGREE THAT ANY CLAIM OR CONROVERSY ARISING OUT OF OR OTHERWISE RELATING TO THIS AGREEMENT, INCLUDING THE MAKING THEREOF, SHALL BE RESOLVED THROUGH PRIVATE BINDING ARBITRATION.** Unless agreed by the Parties in writing, the arbitration shall be conducted by one (1) arbitrator and the discovery rules contained in the Fed. Rules of Civil Procedure as well as the Fed. Rules of Evidence, shall apply in any proceeding brought pursuant to this Paragraph. In the event the dispute resolution terms of any retail installment contract entered into by the Parties shall differ from this paragraph, as between You and Dealer, the terms of this Agreement shall control. Either party may commence an arbitration by serving a written demand for arbitration upon the opposing party by Certified Mail to the address shown on Page 1 of this Agreement. Except as limited by Paragraph 13 below, in the event that either Party brings a suit in State and/or Federal Court in contravention of this Paragraph, any Party moving to dismiss and/or to compel arbitration of the suit pursuant to 9 U.S.C. §1, et. seq. and this Paragraph shall be entitled to an award of costs, including the Party's attorney's fees, as a part of any order granting such Party's motion.

These are the only clauses contained in the sales agreement addressing the matter of arbitrability and we find that the copy of the sales agreement attached to the complaint and to the moving defendant's motion to dismiss reflects that it was indeed signed and initialed where appropriate by Plaintiff and approved by Defendant and that the foregoing language of the agreement clearly articulates that the parties were agreeing to the

9

submission of *both* the matter of the making of the agreement and any and all claims arising out of the agreement to binding arbitration.  Accordingly, the course of action to be taken by this Court now is equally clear: we are constrained to refer the entirety of the matters between these parties to "private binding arbitration" to be conducted in the manner outlined in paragraph 12.  Defendant's motion to stay and compel arbitration is therefore granted.

An order follows.